| | |
|---|---|
| IN RE ALAN LEE SINN,<br>    **Debtor.** | )<br>)<br>) **Case No. 10-43746-can13**<br>)<br>)<br>) |
| **ALAN LEE SINN and**<br>**CARRON ANN HAIRABEDIAN**<br>    **Plaintiffs,**<br><br>**v.**<br><br>**BANK OF AMERICA, et al.**<br>    **Defendants.** | )<br>)<br>)<br>)<br>) **Adv. No. 14-04051-can**<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON MOTION TO WITHDRAW THE REFERENCE

This matter is before the court on co-plaintiff Carron Hairabedian's Motion to withdraw reference of Count IV of this adversary complaint. The Motion is fully briefed, and the parties have been given an opportunity to argue the Motion at the status hearing held September 3, 2014. For the reasons set forth below, this court recommends that the reference to the bankruptcy court of all counts of the complaint – and not just Count IV -- be withdrawn.

### I. Factual and Procedural Background

In the light most favorable to Plaintiffs,[1] the court reports the following factual and procedural background:

Plaintiff/Debtor Alan Lee Sinn owns a home in Independence, Missouri secured by two deeds of trust in favor of Defendant Bank of America Home Loans (sometimes referred to by the parties as the "Bank" or "BAC") [DK 1, Schedule A, p. 11; Schedule D, p. 17]. When Debtor

---

[1] Plaintiff has the burden of proof to establish subject matter jurisdiction. No party has requested an evidentiary hearing and all parties have referred the court to matters pending in the main bankruptcy case outside the adversary complaint itself; none of those matters are in factual dispute. *See In re Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990); *see also Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013).

filed for Chapter 13 bankruptcy on July 19, 2010, he was current on both mortgage payments but had other debts he was seeking to reorganize in his bankruptcy filing [DK 1].

Local Rule 3094-1 allows a debtor who is current on home mortgage payments to continue to pay the mortgage company directly after filing a Chapter 13 bankruptcy. Debtor's plan, however, proposed that the Bank receive its two ongoing (post-petition) monthly mortgage payments out of the $1,465 monthly plan payment.[2] Under the section of the plan for the treatment of home mortgages, Debtor treated the mortgages as being current, by stating that the prepetition default or "arrearage" was "ZERO." [DK 2, p. 2]. Debtor's budget (Schedules I and J) showed he had sufficient income to make the plan payment, once a $300 "contribution from roommate" was included in his income. [DK 1, pp. 24-26].

In the context of this matter, Debtor represents that the "roommate" was and is in fact his co-plaintiff, now fiancé, Ms. Hairabedian. Ms. Hairabedian, he now asserts, was and is also a co-owner of his Independence home as well as a co-debtor with respect to the Bank deeds of trusts. Notably, Ms. Hairbedian's status as co-owner and co-debtor was not reflected on Debtor's Schedule A (of interests in real estate owned) or on Schedule H (codebtors liable with a debtor on any debts listed in the schedules). [DK 1, p. 11, p. 23]. Nor did Ms. Hairbedian receive notice of the bankruptcy filing since she was not a scheduled codebtor. [DK 11].

Debtor later filed Amended Schedules I and J [DK 26, 31] and amended plans [DK 27, 32]; those amendments did not change the treatment of the Bank's deeds of trust and did not include any information about Ms. Hairabedian. The Bank did not object to the original or amended plans, however, and on November 12, 2010, the court confirmed the plan. [DK 36].

---

[2] Although no evidence was submitted on this point, the court notes from her own experience that many practitioners prefer to pay mortgage payments through the plan to avoid disputes about whether payments were made or not.

In the meantime, the court set a deadline of November 24, 2010 for creditors to file claims (the "bar date"). [DK 8]. *See* Fed. R. Bankr. P. 3002(c). The Bank for whatever reason elected not to file proof of its two secured claims by the bar date. Creditors, of course, have no duty to file a claim – creditors "may" file claims pursuant to 11 U.S.C. § 501(a). And, although the Chapter 13 Trustee normally begins distributing money to creditors once the plan is confirmed, the Trustee may only pay those creditors who have "allowed," or filed claims. *See* 11 U.S.C. §§ 502, 1326(c); Fed. R. Bankr. P. 3002(a); Local Rule 3094-1.

Thus, although the plan was confirmed and the Debtor was current in his plan payments to the Chapter 13 Trustee, the Bank did not receive any mortgage payments for some period of time. Ultimately, some eight months after the bankruptcy filing and approximately three months after the bar date, Debtor's counsel filed two proofs of claim on the Bank's behalf on March 17, 2011. [Claims Register, Claims 9-1, 10-1]. A debtor or codebtor is expressly authorized to file a proof of claim under these circumstances. *See* 11 U.S.C. § 501(b); Fed. R. Bankr. P. 3004.

This court surmises that the interruption in mortgage payments due to the Bank's failure to file a claim led directly to the plaintiffs' problems with the defendants in this case. In the intervening years before this complaint was filed, the Bank and its servicer allegedly threatened foreclosure and other collection activities against the Debtor and Ms. Hairbedian. *See* Complaint at ¶¶ 60-63. In addition, the Bank allegedly reported on Ms. Hairbedian's credit report that the mortgage payments were delinquent, causing her to lose financing and employment opportunities. *Id.* at ¶ 55. Debtor's counsel also recites in the complaint a litany of his efforts to stop the collection activity and straighten out Ms. Hairbedian's credit. *Id.* 60-63. Debtor – still performing under his confirmed plan and still under the protection of the automatic stay[3] – then

_____

[3]        11 U.S.C. § 362(a).

allied with Ms. Hairbedian as co-plaintiffs to file the instant adversary complaint[4] against the Bank, the Bank's servicer (Green Tree Servicing, LLC), and a credit reporting agency (Trans Union, LLC).

In Count I of the complaint, the Debtor seeks actual and punitive damages, including attorney fees, against defendant Green Tree, for alleged contempt of the automatic stay and the confirmation order.[5] Count II seeks similar relief against the Bank. In Count III, the Debtor seeks additional damages including punitives and attorney fees against the Bank for violation of the co-debtor stay, 11 U.S.C. § 1301(a).[6] And, in Count IV, Ms. Hairbedian seeks damages, again including punitives and attorney fees, under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, against the Bank and Trans Union.

Defendant Greentree timely filed an answer to the complaint. Defendants Trans Union and the Bank filed in lieu of answers timely motions to dismiss under Fed. R. Civ. P. 12(b)(1) as incorporated in Fed. R. Bankr. P. 7012(b)(1), each asserting that the bankruptcy court lacks subject matter jurisdiction over Count IV, Ms. Hairbedian's FCRA claims. (The Bank also moved to dismiss Counts II and III for failure to state a claim under Rule 12(b)(6), which will be discussed below.) At the initial status conference, the court announced that it would likely grant the motions to dismiss for lack of jurisdiction, but also suggested that the parties consider whether a withdrawal of reference – either by a party's motion or the court's own motion – would be appropriate. Given the Plaintiffs' request for punitive damages, the court also elected to stay discovery pending determination of the motions to dismiss and any motion to withdraw reference, and set a deadline for the filing of such a motion.

---

[4]     Fed. R. Bankr. P. 7001.

[5]     11 U.S.C. § 1327(a) provides that the provisions of a confirmed plan bind a debtor as well as his creditors.

[6]     11 U.S.C. § 1301(a) provides that a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor.

4

Ms. Hairbedian then timely filed a motion to withdraw reference but only of Count IV. Greentree did not respond. Trans Union filed a notice that it did not object to the motion. The Bank filed a response stating it does not oppose withdrawal of reference in general; it argues, however, that the reference should be withdrawn as to all claims of both Plaintiffs, given the intertwining of the factual and legal issues.

## II. Discussion

### Threshold Discussion of Bankruptcy Court's Jurisdiction and Authority to Enter Final Judgments

At the threshold, before reaching the merits of the motion to withdraw reference, the court needs to address the issue that gave rise to the motion – whether the bankruptcy court has subject matter jurisdiction over all or part of the complaint.

The Bank and Trans Union argue that the bankruptcy court lacks subject matter jurisdiction over Count IV, Ms. Hairbedian's FCRA claims. Specifically, these defendants argue that claims of a non-debtor involving non-bankruptcy law do not fall within the limited grant of a bankruptcy court's jurisdiction over only "core" and non-core "related to" claims. Although admitting that her FCRA claims are non-core, Ms. Hairbedian responds that resolution of Count IV will "impact" the Debtor's bankruptcy case, making the FCRA claims fall within "related to" subject matter jurisdiction. Somewhat contradictorily, in her motion to withdraw reference, Ms. Hairbedian also argues that this court should in essence bifurcate the complaint and allow the District Court to hear her FCRA claims, arguing that it would be more efficient for the bankruptcy court to keep the Debtor's three bankruptcy-related counts. For the reasons set forth below, this court recommends that (1) the reference of all claims be withdrawn; and (2) the motions to dismiss for lack of subject matter jurisdiction thus be denied as moot.

The issue of a bankruptcy court's limited subject matter jurisdiction as well as its limited authority to enter final judgments is complicated, and deserves some explanation to set the stage, particularly in light of recent decisions by the United States Supreme Court. But before turning to those decisions, we must examine the pertinent jurisdictional statutes.

28 U.S.C § 1334(a) provides that the district courts of the United States have original and exclusive jurisdiction of all "cases under title 11"; cases under title 11 of course means the bankruptcy case itself. Concomitantly, subsection (b) of 1334 provides that district courts have original but not exclusive jurisdiction of three types of civil proceedings brought under the umbrella of the bankruptcy case: (1) those civil proceedings "arising under" title 11; (2) those "arising in" a case under title 11; and (3) those "related to" a case under title 11. 28 U.S.C. § 1334(b).

In turn, 28 U.S.C. § 157(a) provides that each district court may provide that any or all "cases under title 11" and any proceedings "arising under" or "arising in" or "related to" a case under title 11 shall be referred to the bankruptcy judges for the district. See *United States v. Gurley*, 434 F.3d 1064, 1067 (8th Cir. 2006) ("District courts, however, need not adjudicate these cases; they may refer them to bankruptcy courts."), *citing* 28 U.S.C. § 157(a)). In the Western District of Missouri, all bankruptcy cases and related civil proceedings are automatically referred to the bankruptcy court by standing order. (Standing Order dated August 15, 1984).

Next, 28 U.S.C. § 157(b)(1) authorizes bankruptcy judges "to hear and determine" all bankruptcy cases and "all core proceedings arising under title 11, or arising in a case under title 11," and to enter appropriate orders and judgments subject to appellate review under 28 U.S.C. § 158. "Core proceedings" are statutorily defined, and include matters generally considered

6

essential to the nature of the bankruptcy process, such as matters concerning the administration of the estate, allowance of claims, matters of dischargeability, applicability of the stay, and so on. *See* 28 U.S.C. § 157(b)(2)(A) – (P). As the Eighth Circuit has explained, core proceedings are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995).

Conversely, a bankruptcy judge may only hear – and not finally determine -- a non-core proceeding that is otherwise "related to" a case under title 11. *See* 28 U.S.C. § 157(c)(1). Non-core, related to proceedings are those which do not invoke a substantive right created by federal bankruptcy law and which could exist outside of a bankruptcy. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d at 773-74.

Congress crafted this limited grant of authority to address the constitutional concerns that arise when an Article I court exercises power set aside to Article III courts under the United States Constitution. *See generally Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982). Subsection 157(c)(1) provides that in such "non-core, related to" proceedings, "the bankruptcy court shall submit proposed findings of fact and conclusions of law to the district court…" which then enters any final judgments or orders after *de novo* review. *Id.* Submission to the District Court of non-core, related to proceedings thus preserves the Constitution's reservation in Article III courts of the power to resolve private rights and non-bankruptcy claims. *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*, 134 S.Ct. 2165, 2170 (2014).

Congress did not define what matters should be considered "related to" a bankruptcy case within the meaning of 28 U.S.C. § 157(c)(1), and the courts are split. The Eighth Circuit has, however, adopted the so-called *Pacor* test, derived from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd

Cir. 1984). *See Specialty Mills v. Citizens State Bank*, 51 F.3d 770, 773 (8ᵗʰ Cir. 1995). Under *Pacor*, a matter is considered "related to" a bankruptcy case if it could "conceivably have an effect on the estate being administered in bankruptcy." *Id.* Put another way, an "action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action … and which in any way impacts the handling and administration of the bankruptcy estate." *In re Farmland Industries, Inc.*, 567 F.3d 1010, 1019 (8ᵗʰ Cir. 2009) (cites omitted).

One other point before reaching the merits: until recently, and prior to *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475, 79 U.S.L.W. 4564 (2011), most courts assumed that the bankruptcy court could both hear and determine "related to" matters if the parties consented. *See, e.g.*, Fed. R. Bankr. P. 7008(a) (requiring parties to state whether they consent to the bankruptcy court's entry of final orders in non-core, "related to" matters).

In *Stern*, the Supreme Court held that Congress's grant to bankruptcy courts to determine all statutorily defined core matters was too broad to comply with Article III of the United States Constitution. *Stern* involved a bankruptcy estate's counterclaim for tortious interference against a creditor who had filed a claim against the estate. Congress in 28 U.S.C. § 157(b)(2)(C) had expressly denominated such counterclaims as "core" proceedings. The Supreme Court held, however, that the state law tort claim did not stem from the bankruptcy itself and would not necessarily be resolved in the claims allowance process, and therefore the bankruptcy court as an Article I court lacked constitutional authority to enter a final judgment on the tort claim. *Stern v. Marshall*, 131 S.Ct. at 2619.

Post *Stern* then, bankruptcy courts faced a quandary. 28 U.S.C. § 157 specifies a bankruptcy court's authority with respect to both core and non-core, related to claims, but is silent as to statutorily but unconstitutionally core claims – the so-called *Stern* claims. Under

these circumstances, did a bankruptcy court have authority to hear and submit proposed findings of fact and conclusions of law in *Stern* claim matters in light of this "gap" in the statute? And, would parties' consent, either express or implied, cure the structural constitutional problem?

As a follow-up to *Stern*, the Supreme Court recently decided *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*, 134 S.Ct. 2165, 189 L.Ed.2d 83, 82 U.S.L.W. 4450 (2014), a case for which certiorari was accepted on both of these questions. *Bellingham* did fill the "gap" by holding that bankruptcy courts may hear and submit proposed findings of fact and conclusions of law with respect to *Stern* claims, notwithstanding the absence of express authority to do so in 28 U.S.C. § 157(c). *Bellingham* declined to decide the issue of consent, however.

In the meantime, though, the Supreme Court accepted certiorari in another case that may very well answer the consent question. *Wellness Int'l Network Ltd. v. Sharif,* 727 F.3d 751 (7th Cir. 2013), *cert. granted* in part, 134 S.Ct. 2901 (2014). The matter is set for oral argument early next year, and in the interim, unlike the 5th, 6th, and 7th Circuits, the Eighth Circuit has not yet weighed in. *Compare In re Frazin*, 732 F.3d 313, 319 (5th Cir. 2013), *cert. denied*, – U.S. –, 134 S.Ct. 1770, 188 L.Ed.2d 595 (2014) (parties' express or implied consent cannot cure the constitutional deficiency that results from circumventing or diminishing the Article III structural protections for the federal judiciary); *accord In re BP RE, L.P.*, 735 F.3d 279 (5th Cir. 2013); *In re Galaz*, – F.3d –, 2014 WL 4197213 (5th Cir. Aug. 25, 2014); *Waldman v. Stone*, 698 F.3d 910, 917-18 (6th Cir. 2012), *cert. denied* – U.S. –, 133 S.Ct. 1604, 185 L.Ed.2d 581 (2013). In the absence of 8th Circuit authority, and pending a decision in *Wellness,* the bankruptcy judges of this District have entered a Standing Order that requires parties to affirmatively declare whether claims are statutorily core, statutorily but unconstitutionally core, or non-core, and whether the

9

parties consent. 2014 General Order Creating Local Rule 7001-1 Related to Rules of Pleading Regarding Bankruptcy Court's Authority to Enter Final Judgment.

### *Motion to Dismiss Count IV for Lack of Subject Matter Jurisdiction*

With that explanation as background, the court now turns to the first issue: whether the bankruptcy court has subject matter jurisdiction over Ms. Hairbedian's Count IV FCRA claims against the Bank and TransUnion. This court concludes the answer is no.

First, it is undisputed that Count IV is not a core matter; Ms. Hairbedian's FCRA claims neither "arise in" or "under" any provision of title 11. Nonetheless, Ms. Hairbedian asserts that this court has "related to" jurisdiction, arguing that she lives with the Debtor, is a co-debtor and co-owner, and helps to pay his living expenses and fund his plan. The outcome of the adversary, she asserts, will impact the Debtor and his estate. And, as co-debtor, she claims status as a necessary party to enforce the alleged co-debtor stay violations. Thus, she argues, there is a "conceivable impact" on the Debtor and his Chapter 13 proceeding that gives this court subject matter jurisdiction. Finally, she asserts that bankruptcy courts have supplemental or even independent jurisdiction over FCRA claims.

This court believes Ms. Hairbedian stretches the *Pacor* test too far. Ms. Hairbedian is not a party to the Debtor's bankruptcy proceeding. As a roommate or even a fiancé, Ms. Hairbedian is under no legal duty to fund the Debtor's plan – and Debtor did not even schedule her or include her in his plan. The state of Ms. Hairbedian's credit and the resolution of the FCRA claims have nothing to do with the Debtor, his Chapter 13 plan, or the administration of his Chapter 13 estate, except in the most tangential of ways. Moreover, one of the defendants Ms. Hairbedian sues – Trans Union – is not even a creditor of the Debtor's estate. This cannot be the sort of "impact" that Congress or the Eighth Circuit envisioned.

Case 4:14-cv-00859-DGK   Document 2   Filed 10/08/14   Page 10 of 18

Nor would it be appropriate for the bankruptcy court to rely on some sort of supplemental jurisdiction.  As some courts have noted, an expansive interpretation of "related to" jurisdiction to include supplemental jurisdiction renders the careful distinctions between "arising in and under" and "related to" to be superfluous, as well as in derogation of the Supreme Court's admonishment to read jurisdictional statutes narrowly. *E.g., In re Valley Food Services, LLC,* 400 B.R. 724, 729-30, n. 11 (Bankr. W.D. Mo. 2008).

With respect to the co-debtor stay, Ms. Hairbedian's argument is likewise misplaced. The co-debtor stay under 11 U.S.C. § 1301 is meant to protect the debtor, not the co-debtor. *Brooks v. Gen. Motors Acceptance Corp (In re Brooks)*, 340 B.R. 648 (Bankr. D. Me. 2006) (*citing In re Humphrey*, 310 B.R. 735, 737 (Bankr. W.D. Mo. 2004).  The purpose of the co-debtor stay is "to simultaneously preserve the substantive rights of creditors and to preserve the fresh start of the debtors by preventing indirect collection practices." *King v. Wells Fargo Bank (In re King),* 362 B.R. 226, 230 (Bankr. D. Md. 2007) (citation omitted).  Thus Ms. Hairbedian is not a necessary party to the Debtor's attempts to enforce the co-debtor stay.

As a final matter, the court notes that there is a debate about the scope of bankruptcy courts' jurisdiction over federal consumer protection laws such as the FCRA claims. *Cf. Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014) (recognizing Fair Debt Collection Practices Act violation); *In re Guenot,* 2014 WL 67320 (Bankr. D.N.J. Jan. 2, 2014) (state and federal consumer protection laws are pre-empted by the bankruptcy code in the claims objection context where the laws conflict).  This court need not wade into that thorny debate, however, to resolve the jurisdiction issue here. In sum, the mere fact that the Debtor and Ms. Hairbedian live together and that she may be willing to gift to Debtor what amounts she may collect in a judgment against Trans Union or the Bank does not create the type of nexus or

11

impact that *Pacor* contemplates, particularly in light of *Stern's* and *Bellingham's* caution about the scope of bankruptcy court jurisdiction and authority. This court would therefore in the ordinary course recommend that the motions of Trans Union and the Bank to dismiss Count IV for lack of subject matter jurisdiction be sustained (or sustain the motions on its own order).

Dismissing Count IV leaves the matter in somewhat of a procedural mess, however, since three counts remain which Debtor alleges are non-core, "related to" claims, but as to which Debtor consents to entry of a final judgment by the Bankruptcy Court. Complaint, ¶11.[7] Of the three defendants, only Green Tree has filed an answer; Green Tree "denies" that allegation. The Bank and Trans Union elected to file motions to dismiss in lieu of answers, meaning that this court does not know whether the Bank (or Trans Union, to the extent Debtor asserts other claims against it during the course of discovery) agree that the matters are non-core, "related to" claims; whether one or both will consent to final judgment; or whether either will request a jury trial. The court is also unable to predict whether, assuming consent of the parties to keep Counts I, II, and III before this court, such consent will ultimately be upheld as constitutional by the Supreme Court when it rules in the *Wellness* case sometime next year.

Adding to these concerns is the fact that all four counts involve intertwined legal and factual issues. This court believes it would not benefit judicial economy to have part of the case here and part in District Court, particularly if the part remaining here would still require *de novo* review by the District Court. Moreover, having two cases pending in two different forums could have the potential of whipsawing the defendants with potentially inconsistent decisions. It was for this reason that the court raised the suggestion of withdrawal of reference initially, and recommends withdrawal of the entire complaint in this Report.

---

[7]     At the status conference held September 3, 2014, counsel for the Debtor stated on the record that he believes Counts I, II and III are core, and any reference to the contrary in the complaint is an error.

### *The Motion to Withdraw Reference*

A court has the discretion to withdraw the reference *sua sponte* or on motion of a party if the motion is "timely" and the party has shown "cause."[8] 28 U.S.C. § 157(d). The burden of proof on both elements is on the moving party. *In re Eide v. Haas et. al. (In re H&W Motors Express Co.)*, 343 B.R. 208, 213 (N.D. Iowa 2006).

It is unclear what makes a motion "timely." Section 157(d) does not define when a motion is timely, and courts are not in agreement. *Compare Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 730 (D. Kan. 1986) (ten-month delay in filing a motion to withdraw reference was "timely"); *Laine v. Gross,* 128 B.R. 588, 589 (D. Me. 1991) (six month delay was untimely). Courts do, however, generally agree that a motion is timely "if it was made as promptly as possible in the light of the developments in the bankruptcy proceeding" or more simply, if it was made "at the first reasonable opportunity." *U.S. v. Kaplan*, 146 B.R. 500, 503 (D. Mass. 1992). Requiring the party seeking withdrawal to file its motion as soon as possible protects the court and the parties in interest from useless costs, unnecessary delays, and abusive stalling tactics. *In re Giorgio*, 50 B.R. 327, 328 (D.R.I. 1985).

In this case, this court certainly considers the motion timely. Plaintiffs filed their complaint on April 29, 2014, and the first status conference was held in due course on July 1, 2014. In the interim, Trans Union and the Bank had filed their motions to dismiss, which were not fully briefed by the July 1, 2014 status conference. The court set a deadline of July 14, 2014 for the filing of any motions to withdraw reference with 14 days for responses. The court set a status conference for September 3, 2014 after the motion was fully briefed on August 5, 2014. No discovery has commenced, and no trial date is set. No party has argued that the motion is

---

[8]     There is also a mandatory withdrawal provision; however, the parties are not arguing here that withdrawal of the reference is mandatory.

untimely.  Moreover, the court sees no evidence here of "forum shopping, stalling," or "obstructionist tactics." *Commercial Fin. Servs. Inc. v. Temple (In re Commercial Fin. Servs., Inc.)*, 2003 WL 22927208, at *3 (N.D. Okla. Apr. 25, 2003) (citations omitted). The filing of the motion to withdraw the reference was at the "first possible opportunity," *Giorgio*, 50 B.R. at 328, and is thus timely.

The second element a plaintiff must show is "cause."  Cause may exist for a variety of reasons. A party's desire to exercise its right to a jury trial is generally considered cause. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).  When a court is faced with non-core claims that require it to consider non-bankruptcy law, cause again exists to withdraw the reference. *Laine v. Goss*, 128 B.R. 588, 589 (D. Me. 1991).  Courts also consider the effect of the withdrawal on any delays or costs to the parties, whether withdrawal will promote judicial efficiency, and the effect of withdrawal on the uniformity of the bankruptcy administration. *In re Phelps Technologies, Inc*., 238 B.R. 819, 823 (Bankr. W.D. Mo. 1999).

Here, the FCRA claims of Ms. Hairbedian are non-core and not "related to" the instant bankruptcy case of the Debtor. As noted earlier, the bankruptcy court therefore lacks subject matter jurisdiction over Count IV of the complaint.  The remaining causes of action are factually intertwined with the FCRA claims.  It would simply be more efficient for these claims to be decided and ultimately tried in one forum with the authority to enter final judgment on all matters.  It would conversely waste the parties' time and money to present the same evidence twice, and it would waste judicial resources for two judges to hear the same facts in different forums. Cause for withdrawal of reference exists, and therefore this court recommends that withdrawal of the reference is appropriate. If the reference is withdrawn of all counts, then Trans Union's motion to dismiss Count IV for lack of subject matter jurisdiction is rendered moot,

since the District Court has federal jurisdiction over Ms. Hairbedian's FCRA claims. 28 U.S.C. § 1331.

### Bank's Motion to Dismiss Counts II & III For Failure to State A Claim

The Bank asserts that the court should dismiss Counts II and III of the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as incorporated by Fed. R. Bankr. P. 7012(b)(6). Specifically, the Bank argues that merely reporting information about the mortgage loans to a credit bureau does not violate the automatic stay or the Debtor's confirmed Chapter 13 plan. This court recommends that the Bank's motion to dismiss be denied.

The Bank correctly sets forth the applicable standard; that is, to survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, that state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

The automatic stay broadly prohibits a creditor's attempts to collect against a debtor or his property that is property of the estate. 11 U.S.C. § 362(a). "Property of the estate" is similarly broadly defined to include all legal and equitable interests of a debtor as of the date of the bankruptcy filing. 11 U.S.C. § 541(a). In Chapter 13, the stay is extended to protect individuals who have co-signed consumer debts with the debtor (11 U.S.C. § 1301(a)), and property of the estate is also augmented to include certain property acquired postpetition. 11 U.S.C. § 1306. As already discussed, the provisions of a confirmed plan bind both the debtor and his creditors. 11 U.S.C. § 1327. Section 105(a) of the Bankruptcy Code grants the court the power to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title

Case 4:14-cv-00859-DGK   Document 2   Filed 10/08/14   Page 15 of 18

11]." 11 U.S.C. § 362(k)(1) in turn provides that a debtor injured by a "willful" violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees[.]" To recover under § 362(k), the debtor must show that the creditor's violation of the automatic stay was willful and that the violation injured the debtor. *Garden v. Central Nebraska Housing Corp.* 719 F.3d 899, 906 (8th Cir. 2013), *citing Lovett v. Honeywell, Inc.,* 930 F.2d 625, 628 (8th Cir.1991).

The Bank cites a number of cases for the proposition that the mere reporting of derogatory credit information does not violate the automatic stay and, in general, this court has no quarrel with that proposition in the abstract.[9] The court need not decide at this juncture of the case, however, whether "mere, passive credit reporting" violates the stay, because here, the complaint also alleges direct stay violations. Specifically, the complaint alleges that the Bank was aware of the bankruptcy case and the confirmed plan requiring the Bank's mortgage payments be made through the plan, and that, although the Debtor timely made all payments under the plan, the Bank threatened both Debtor and Ms. Hairbedian with foreclosure of the Debtor's residence, and reported the Debtor as delinquent on his credit report.

In the light most favorable to the Debtor, these allegations state a plausible claim against the Bank for willful violation of the stay and the co-debtor stay, as well as for contempt of the order confirming the plan. This court therefore recommends that the Bank's motion to dismiss for failure to state a claim be denied.

---

[9]   Most of the cases the Bank cites involve alleged violation of the discharge injunction of § 524, not violation of the stay or co-debtor stay of §§ 362(a) and 1301(a). The distinction is subtle, but may result in a different answer, depending on which Code section is at issue. Similarly, the result may be different in the context of a confirmed Chapter 13 reorganization bankruptcy, compared to a Chapter 7, given that the bankruptcy court's § 105(a) powers are then interpreted in light of preserving the reorganization, as opposed to the liquidation that occurs in a Chapter 7 proceeding. Also, most of the Bank's cases were decided in the context of summary judgment, and not Rule 12(b)(6). *See generally In re Russell*, 378 B.R. 735, 743 (Bankr. E.D.N.Y. 2007) ("[o]ther courts have had no difficulty recognizing that false or outdated reporting to credit reporting agencies, even without additional collection activity, can constitute an act to extract payment of a debt; discharge injunction violation); compare *In re Mahoney*, 368 B.R. 579, 588 (Bankr. W.D. Tex. 2007) (mere reporting of credit information about debtor vel non is not "act" to collect discharged debt for purposes of discharge injunction statute absent link between act of reporting and collection or recovery of discharged debt).

**Conclusion**

Ms. Hairbedian's motion to withdraw the reference is timely, and she has met her burden showing that there is cause to withdraw the reference with regards to the FCRA claims. She conceded on the record at the status hearing held September 3, 2014 that all counts should be withdrawn due to the potential of inconsistent verdicts. The Bank has also met its burden to show that cause exists to withdraw all the claims, not just the FCRA claims. The other defendants have expressed no opposition. The court therefore respectfully requests that the District Court adopt this Report and Recommendation and enter an order withdrawing the reference of the above-captioned adversary complaint, and denying the Bank's and Trans Union's motions to dismiss Court IV for lack of subject matter jurisdiction, since the District Court would have federal question jurisdiction over Count IV. The court recommends that the Bank's motion to dismiss for failure to state a claim be denied, and that, in the interest of judicial economy, the district court hear and determine the bankruptcy-specific counts under its original bankruptcy jurisdiction in 28 U.S.C. § 1334, due to the intertwined nature of the bankruptcy and non-bankruptcy counts. The bankruptcy court is willing to oversee discovery and make further report and recommendation as to the three bankruptcy-specific counts, as the District Court may deem appropriate, with due consideration to this court's lack of jurisdiction over any matters related to Count IV.

In the alternative, if the District Court disagrees that reference of all four counts should be withdrawn, then the court recommends that the District Court conduct a *de novo* review and enter a final order sustaining the Bank's and Trans Union's motions to dismiss Count IV for lack of bankruptcy court subject matter jurisdiction, and deny the report and recommendation to withdraw the reference of the remaining three bankruptcy-specific counts.

17

Dated: October 7, 2014

/s/ Cynthia A. Norton
United States Bankruptcy Judge